

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

HERITAGE-NEVADA VIII, LLC,  )
                            )
       Plaintiff,           )   2:08-cv-00130-PMP-RJJ
                            )
vs.                         )
                            )   **ORDER**
WORLD MARKET CENTER VENTURE, LLC, )
                            )
       Defendants.          )
_____)

This matter came before the court for a hearing on Plaintiff's Emergency Motion to Compel Responses to Plaintiff's First Document Requests Nos. 18-24, 36, and 38 and Plaintiff's First Interrogatories Nos. 14-17 (#25). The Court has considered Plaintiff's Motion (#24); Defendant's Opposition (#27); and Plaintiff's Reply (#28), as well as the arguments of counsel.

### BACKGROUND

This is a trademark dispute. Heritage-Nevada VIII, LLC (Heritage) has announced plans to open a jewelry operation near the Work Market Center Las Vegas. Heritage intends to operate its proposed venture under the name World Jewelry Center. Due to its proximity to World Market Center Las Vegas, World Market Center Venture, LLC (WMC) objects to Heritage's use of the name World Jewelry Center for its jewelry operation. WMC contends "that by the sheer proximity, the public would falsely associate the businesses as being internally related." Opposition (#27) at 2.

On January 30, 2008, Heritage filed a Complaint seeking relief in the form of an order declaring the following:

1. WMC has no valid or enforceable trademark right in the designation WORLD MARKET CENTER;

2. Heritage has not infringed or violated any federal, state, or common law trademark right of

WMC, including but not limited to rights arising under 15 U.S.C. §§ 1114 and 1125;

3. Heritage's WORLD JEWELY CENTER trademark is not confusingly similar to WMC's WORLD MARKET CENTER designation;

4. There is no likelihood of confusion between Heritage's WORLD JEWELRY CENTER trademark as used in connection with its goods and services and WMC's alleged WORLD MARKET CENTER trademark as used in connection with its goods and services;

5. Heritage has not and is not likely to violate any federal, state, or common law trademark dilution right of defendant, including but not limited to under 15 U.S.C. § 1125 and including but not limited to blurring or tarnishment theories;

6. Heritage has not competed unfairly with WMC and has not engaged in any deceptive trade practices or any other type of tortious activity in violation of any federal, state, or common law; and

7. Heritage is entitled to register its WORLD JEWELRY CENTER trademark covered by its pending federal trademark application.

In addition to declaratory relief, Heritage also seeks a permanent injunction enjoining WMC from taking any action against Heritage arising out of its, or its affiliates', use of the WORLD JEWELRY CENTER trademark. Lastly, Heritage requests that WMC's opposition to Heritage's WORLD JEWELRY CENTER trademark application be dismissed with prejudice. *See* Complaint (#1) at 30-31.[1]

In its Answer, WMC raises a number of affirmative defenses and asserts the following counterclaims:

1. Heritage's use of the WORLD JEWELRY CENTER designation, and variants thereof, constitutes false advertising and a misrepresentation of the nature, characteristics, and/or geographic origin of Heritage's goods, services, and commercial activities in violation of 15 U.S.C. § 1125(a)(1)(B);

2. Heritage's use of the WORLD JEWELRY CENTER designation, and variants thereof, to

---

[1] Heritage also seeks fees and costs related to this action.

- 2 -

     market its development constitutes a false designation of origin that has created a likelihood of confusion among consumers in violation of 15 U.S.C. § 1125(a)(1)(A);

3.   Heritage's use of the WORLD JEWELRY CENTER designation, and variants thereof, constitutes trademark infringement as against WMC in violation of 15 U.S.C. § 1115;

4.   Heritage's use of the WORLD JEWELRY CENTER designation, and variants thereof, constitutes trademark infringement as against WMC in violation of NRS § 600.420;

5.   Heritage's use of the WORLD JEWELRY CENTER designation, and variants thereof, constitutes a deceptive trade practice in violation of NRS § 598.0915; and

6.   Heritage's use of the WORLD JEWELRY CENTER designation, and variants thereof, violates WMC's common law trademark rights.

WMC also seeks a permanent injunction prohibiting Heritage from (1) advertising its planned showroom as though connected to the World Market Center Las Vegas, (2) using the WORLD CENTER LAS VEGAS or WORLD JEWELRY CENTER trademarks for any purpose; (3) representing itself as a representative of WMC; (4) representing to third parties that it is affiliated with, or endorsed by, WMC; and (5) representing to third parties that its project is affiliated with, or endorsed by, WMC or the World Market Center Las Vegas.[2]

     On May 15, 2008, the parties filed a proposed joint discovery plan/scheduling order. The Court held a hearing and expressed its concern regarding the parties desire to bifurcate the damages and liability portions of discovery and trial. The parties agreed to meet and confer on the issue and submit a status report or new discovery plan/scheduling order. *See* ( #18). Subsequently, the parties filed an amended joint discovery plan/scheduling order wherein they agreed to waive their right to a jury trial "on all issues so triable" in order to bifurcate the liability and damages portions of discovery and trial. *See* ( #19). The Court adopted the amended discovery plan.

     On October 27, 2008, the parties submitted a joint status report representing that the parties had exchanged written discovery, were preparing to take depositions, and that there were no pending discovery motions. The parties also met in Las Vegas in June 2008 to discuss settlement but were

---

[2] WMC also seeks fees and costs related to this action.

- 3 -

unable to reach agreement.³ In spite of their inability to settle the matter on their own, the Court harbored high hopes that discovery would continue uninterrupted given the sophistication of the parties and reputation of the firms handling this matter.

Heritage filed the instant motion seeking an order compelling WMC to respond to certain Interrogatories and Requests for Production. WMC asserted a number of objections and refused to respond to Interrogatory Nos. 14-17 on the grounds that Heritage had exceeded the number of interrogatories permitted under Fed.R.Civ.P. 33(a). WMC also asserted a number of objections to Heritage's Rule 34 Requests for Production Nos. 18-24, 36, 38, including objections that much of the requested information is irrelevant or not reasonably calculated to lead to discovery. Additionally, WMC objected to certain requests on the grounds that they requested documents that are proprietary, confidential, and sensitive to WMC or are otherwise protected by the work product or attorney client privilege.

## DISCUSSION

Under Fed. R. Civ. P. 26(b)(1) "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." "For discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence." *Eicholtz v. J.C. Penney Co., Inc.*, 2006 WL 2520321, *2 (D. Nev. 2006) (citing *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)). Even if allowed, the court "must" limit discovery if it determines that "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2).

---

³ Heritage believes the parties would be aided by submitting the dispute to mediation with this Court; however, WMC does not believe such a mediation serves its clients best interests. Therefore, no mediation has been scheduled.

-4-

Heritage is pursuing discovery pursuant to Federal Rules of Civil Procedure 33 and 34. Heritage asserts that the disputed discovery requests are aimed at WMC's trademark infringement counterclaim. To establish its trademark infringement claim WMC must prove: (1) ownership of a valid trademark, and (2) likelihood of confusion. *Paul Frank Indus. v. Sunich*, 502 F. Supp. 2d, 1094, 1099-1100 (C.D. Cal. 2007) (*citing Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). In determining whether there is a likelihood of confusion, courts in this circuit look to the eight-factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979). The eight factors are: (1) the strength of the mark; (2) similarity of the marks; (3) proximity of the goods/services sold; (4) similarity in marketing channels used; (5) types of goods/services and degree of care likely to be exercised by the purchaser; (6) evidence of actual confusion; (7) intent of the second user; and (8) likelihood of expansion of product lines and services. Thus, so long as the disputed discovery requests have a conceivable bearing on any of the *Sleekcraft* factors or the issue of ownership, the information is discoverable.

## I.   Interrogatories

### A.  Local Rule 26-7(b)

A dispute has arisen regarding whether Heritage exceeded the number of interrogatories it can serve under Fed. R. Civ. P. 33 absent a stipulation or court order. However, before the court will consider a discovery motion, the parties must personally consult in an effort to resolve the dispute without court intervention. *See* Local Rule (LR) 26-7(b) ("[d]iscovery motions will not be considered unless a statement of moving counsel is attached thereto certifying that, after personal consultation and sincere effort to do so, counsel have been unable to resolve the matter without court action."). Local Rule 26-7(b) requires the moving party to certify it has personally consulted with the responding party in an effort to resolve the dispute. *Fifty-Six Hope Rd. Music, Ltd. v. Mayah Collections, Inc.*, 2007 LEXIS 43012 *13 (D. Nev.) (*citing Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D.166, 171-72 (D. Nev. 1996). The certification must contain information sufficient so that the reviewing court "can pass a preliminary judgment on the adequacy and sincerity of the good faith conferment between the parties." *Fifty-Six Hope Rd. Music, Ltd.* at *13. Beyond mere certification, there is also a performance requirement. The moving party's counsel

must initiate and engage in a two-way communication with the responding party to meaningfully discuss each contested discovery dispute in a sincere effort to avoid judicial intervention. *Id.*; *see also Shuffle Master, Inc.*, 170 F.R.D. at 172 (*citing Nevada Power Co. v. Monsanto Co.*, 151 F.R.D. 118 (D. Nev. 1993). "A sincere effort to resolve the dispute occurs where both parties have presented the merits of their respective positions and meaningfully assessed the relative strengths of each." *Fifty-Six Hope Rd. Music, Ltd.* at *16 (emphasis added).

As the case law and explicit language of LR 26-7(b) make plain, all affected parties have a duty to meaningfully participate in the required personal consultation. In other words, the performance requirements are reciprocal. Personal consultation is not a one way street. *See Nevada Power, Co. v. Monsanto Power Co.*, 151 F.R.D. 118, 120 (D. Nev. 1993) ("[T]he parties must present to each other the merits of their respective positions with the same candor, specificity, and support during information negotiations as during the briefing of discovery motions."). To meet the purpose of the personal consultation requirement (lessening the burden on the courts and reducing unnecessary expenditure of resources by litigants through informal, extrajudicial resolution of discovery disputes), as well as counsel's obligations under Fed.R.Civ.P. 1[4], the parties to the dispute must not only air their respective positions but assess their relative strengths. *See Fifty-Six Hope Rd. Music, Ltd.* at *16. A "meaningful" assessment, among other things, (1) ensures that no party to the dispute reduces the personal consultation to a pro forma or formalistic prerequisite to a judicial resolution and (2) ensures that any disputes that are not resolved between the parties, are presented to the court in a more narrow and focused manner.

Unfortunately, the court has detected a disturbing trend in many of the pre-trial discovery motions filed in this court. Too often, objecting and non-responding parties abdicate, or worse ignore, their reciprocal performance duties under LR 26-7(b)–preferring the rigidity of referring to their position as "black letter law." Typically, this is nothing more than obstinance which

---

[4] Federal Rule of Civil Procedure 1 provides that the civil rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." The word "administered" was added to Rule 1 in 1993 in order to "recognize the affirmative duty of the court to exercise the authority conferred by these rules to ensure that civil litigation is resolved not only fairly, but without undue cost or delay." *See* Advisory Committee Comments to 1993 Amendments. "As officers of the court, attorneys share this responsibility with the judge to whom the case is assigned." *Id.*

substantially hampers personal consultation and severely undercuts the purposes of LR 26-7(b). This interrogatory counting dispute puts into sharp relief what happens when a non-responsive or objecting party fails to fulfill its duties during a personal consultation

Due to the nature of the dispute, the court was immediately interested in the parties' efforts during their personal consultation. Specifically, the court was interested in whether the parties had meaningfully assessed the relative strength of the objection in order to narrow or resolve the dispute without court intervention. To that end, the court inquired of counsel regarding what standard was used during the personal consultation when evaluating the relative strength of the counting objection. WMC's counsel was unable to articulate any standard except to state that it was guided by "black letter law."[5] Being guided by "black letter law" during personal consultation regarding an interrogatory counting objection is a curious practice when the objecting party's count is disputed. It is a tactic designed to eviscerate the purpose of a personal consultation. Rather than seeking cover from the "black letter law" during personal consultation the parties should be guided by the purpose of Rule 33.

Federal Rule of Civil Procedure 33 provides that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). This "presumptive limitation" was added as part of the 1993 amendments to the rule. The aim of the rule is not to "prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device." *See* Advisory Committee Notes to 1993 Amendments. "Because the device can be costly and may be used as a means of harassment, it is desirable to subject its use to the control of the court with the principles states in Rule 26(b)(2)." *Id.* Indeed, the court may grant "leave to serve additional interrogatories ... to the extent consistent with Rule 26(b)(2)." Fed. R. Civ. P. 33(a).

Accordingly, when parties are consulting regarding counting interrogatories they should be guided by the fact that the rule is not designed to prevent discovery, but to eliminate excess. Further, just as the court will, if called upon, determine whether to grant leave under Rule 33, the

---

[5] Despite this bold proclamation, WMC cited no law in support of its count, but simply classified its count as "black letter law."

parties should view the issue through the lens of Rule 26(b)(2) being especially "mindful of the nature and complexity of the lawsuit." *Cf. Valdez*, 134 F.R.D. at 298. It is insufficient for a party to raise a "counting" objection and refuse to meaningfully engage in the required personal consultation by declaring that their count represents "black letter law."

Based on the circumstances presented here, the court finds that WMC failed to comply with its reciprocal performance duties during the personal consultation. The court would be justified in awarding fees and costs related to this deficiency. However, given the overall conduct of both parties, the court declines to do so in this instance.

### B. Number of Interrogatories

Courts in this district have had numerous opportunities to address interrogatory counting objections. *See Valdez v. Ford Motor Company*, 174 F.R.D. 684 (D. Nev. 1991)[6]; *see also Ginn v. Gemini, Inc.*, 137 F.R.D. 320 (D. Nev. 1991); *see also Kendall v. GES Exposition Servs.*, 174 F.R.D. 684 (D. Nev. 1997). Here, Heritage served WMC with seventeen (17) interrogatories. WMC answered the first thirteen (13) but refused to answer Interrogatories 14-17 based on its position that Heritage had exceeded its allotted number of interrogatories under Rule 33. The court has undertaken the simple task of parsing the interrogatory language to determine the validity of WMC's objection. Rather than restate each interrogatory, the court will identify each interrogatory and whether it should be counted as one, or more than one, interrogatory for purposes of Rule 33.

Interrogatory No. 1 should be counted as one interrogatory.

Interrogatory No. 2 should be counted as two separate interrogatories.

Interrogatory No. 3 should be counted as one interrogatory.

Interrogatory No. 4 should be counted as two separate interrogatories.

Interrogatory No. 5 should be counted as one interrogatory.

Interrogatory No. 6 should be counted as two separate interrogatories.

Interrogatory No. 7 should be counted as two separate interrogatories.

Interrogatory No. 8 should be counted as one interrogatory.

---

[6] The opinion was based on the application of Local Rule 190-(1)(c) and preceded the 1993 Amendments to the Federal Rules of Civil Procedure. Local Rule 190-(1)(c) has subsequently been repealed.

1 | Interrogatory No. 9 should be counted as one interrogatory.
2 | Interrogatory No. 10 should be counted as one interrogatory.
3 | Interrogatory No. 11 should be counted as one interrogatory.
4 | Interrogatory No. 12 should be counted as one interrogatory.
5 | Interrogatory No. 13 should be counted as two separate interrogatories.
6 | Interrogatory No. 14 should be counted as one interrogatory.
7 | Interrogatory No. 15 should be counted as two separate interrogatories.
8 | Interrogatory No. 16 should be counted as one interrogatory.
9 | Interrogatory No. 17 should be counted as one interrogatory.

Accordingly, the court finds that Heritage served seventeen (17) interrogatories to ask twenty-two (22). Heritage has not exceeded the Rule 33 limit.

### C. Other Objections

Near the end of its Opposition (#27), WMC states that should its counting objection be overruled, it "reserves its objections to remaining interrogatories." Assuming the propriety of such a request, the court has looked at the remaining objections that "are detailed in WMC's responses to Heritage's interrogatories." The objections to interrogatory Nos. 14 and 15 are simply boilerplate objections for which WMC offers no support and no detail. Such boilerplate objections are inadequate and tantamount to making no objection at all. *See Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, 2007 LEXIS 19442*9 (D. Nev.) (citations omitted). Further, WMC's attempt to limit the relevance of its annual advertising, marketing, and promotional expenditures for WMC marked goods and services to the damages portion of this lawsuit is unpersuasive. Although certainly relevant to damages, such expenditures are also relevant, for purposes of Rule 26, to multiple *Sleekcraft* factors. Accordingly, WMC's objection to Interrogatory No. 16 is overruled.

## II. Requests For Production

A dispute has also arisen regarding Heritage's Rule 34 Requests for Production Nos. 18-24, 36, 38. WMC's raises a number of objections to each of the requests. The court is particularly concerned by WMC's attempts to rely upon the attorney-client privilege and work-product doctrine without a Rule 26(b)(5) privilege log. It is "black letter law" that "[b]oilerplate objections or blanket

1  refusals inserted into a response to a Rule 34 request for production of documents are insufficient
2  to assert a privilege" and may result in waiver. *Burlington Northern & Santa Fe Ry v. United States*
3  *District Court for the District of Montana*, 408 F.3d 1142, 1148 (9th Cir. 2005); *see also Koninklijke*
4  *Philips*, 2007 Lexis 13956*14 (D. Nev.) (Failure to provide privilege logs or affidavits with initial
5  responses resulted in waiver of attorney-client and work-product privileges) (*citing Diamond State*
6  *Insurance Co. v. Rebel Oil Co.*, 157 F.R.D. 691, 698 (D. Nev. 1994).

7  Here, WMC raised the attorney-client and work-product privileges in boilerplate fashion.
8  WMC did not serve a Rule 26(b)(5) privilege log or an affidavit supporting the objection. At the
9  hearing on this matter, approximately three months following their initial responses, WMC still had
10 not produced a privilege log or supporting affidavit. WMC's failure to produce any privilege log
11 or supporting affidavit has resulted in its waiver of the objections. *See Burlington Northern*, 408
12 F.3d at 1149 (finding claims of privilege waived when the objecting party did not file a privilege log
13 until five months after the Rule 34 time-limit).

14 Further, WMC's unreasonable boilerplate privilege objections provide no assistance to
15 Heritage or the court in the evaluation of the claim. WMC is, or should be, fully aware of its duty
16 to provide privilege logs and/or affidavits. Thus, based on a totality of the circumstances, the court
17 concludes that WMC has waived its privilege objections.[7]

### A. Positions In Prior Litigations (Request For Production No. 18).

Request for Production No. 18 seeks "[a]ll documents filed, served, or produced in any other trademark-related dispute, lawsuit, or Trademark Trial and Appeal Board proceeding to which WMC is or has been a party and which relate in any way to the WMC Marks, including but not limited to disputes and lawsuits involving Cost Plus Management Services, Inc., Dreamscape, Inc., or World Trade Centers Association, Inc." Prior to the hearing, WMC agreed to produce the requested public

---

[7] WMC also objects to each of the disputed interrogatories on the grounds that they demand "documents that are proprietary, confidential, and sensitive." Rather than deny production on these grounds, the parties should either enter a stipulated protective order, or WMC should move for a protective order under Rule 26(c)(1)(G). It is the court's understanding that such an agreement has either been reached or is being negotiated.

filings. The court will hold WMC to its agreement. The court also agrees with WMC that requiring production of all documents served or produced in other disputes is unnecessary.

**B. License And Settlement Agreements (Requests for Production Nos. 19-24)**

Requests for Production Nos. 19 and 20 seek the license agreement and settlement agreement, if any, entered into by Cost Plus Management Services, Inc. and WMC as a result of the "Cost Plus" litigation. *See* Ex. 2 attached to Heritage's Motion (#25). Heritage also seeks all drafts of the agreements, all correspondence concerning the agreements and negotiation of the agreements, all amendments or addendums to the agreements, and all press coverage regarding the license agreement and the underlying Cost Plus litigation. The agreements are clearly relevant to determine the extent of ownership rights, if any, WMC has in the trademark it claims Heritage has infringed.[8] Insofar as the agreements themselves are relevant, it stands to reason that any addendums or amendments to the agreements are also relevant. Production of the actual agreements and any amendments or addendums to the actual agreements is sufficient. It is not necessary to produce drafts of, or correspondence regarding, the actual agreements. Additionally, there is no need for WMC to produce press coverage of either agreement, or the underlying Cost Plus litigation. This information is equally accessible to both parties. The court will not shift Heritage's research burden to WMC.

Request for Production No. 21 seeks all settlement agreements between WMC and any third-party that "has adopted, used, marketed, sold, planned to use, applied to register, or registered any trademark that contains the words "World" and "Market" and/or "World" and "Center". During the hearing, it became clear that this request was specifically aimed at settlement agreements stemming from WMC's litigation with Dreamscape, Inc., or World Trade Centers Association, Inc. These agreements, to the extent they exist, are relevant for the same reasons and purposes as the Cost Plus agreements. Further, because the court agrees with Heritage that this information is highly relevant to WMC's trademark infringement claims, the request will not be limited to settlement agreements

---

[8] The court also agrees with Heritage that, for purposes of Rule 26, the requested information is relevant to multiple *Sleekcraft* factors used in determining likelihood of confusion under WMC's Lanham Act claims.

stemming from the specifically enumerated litigation. WMC must produce <u>all</u> agreements which are responsive to this request.

Requests for Production Nos. 22-23 appear to simply expand on Request No. 21. The court agrees with Heritage that the category of agreements and documents requested, to the extent they actually exist, are relevant. It is not necessary to produce any drafts of "proposed" or "unexecuted" agreements or documents.

Request No. 24 is simply a catch-all request. Subsections (a)-(d) are duplicative of prior requests and, therefore, subsumed in them. To the extent the documents sought in subsection (e) were not produced during initial disclosures, WMC is obligated to produce them.

**C. Marketing Documents (Request Nos. 36, 38)**

In reviewing Request Nos. 36 and 38 the court was immediately concerned with the breadth and relevance of the requested information. After articulating its concerns at the hearing, the court is satisfied with Heritage's proposed limitations on the disputed requests. Accordingly, Request No. 36 is limited to relevant activities prior to trial. Request No. 38 is limited to communications from WMC to its target market, including potential exhibitors, buyers, renters, etc.[9]

## **CONCLUSION**

"Much ink has been spilled on the costs of abuse of the discovery process." *Burlington Northern*, 408 F.3d at 1148. The court will not add to the carnage. Each party, although perhaps not equally, has contributed to what the court believes was an unnecessary motion. Accordingly, the court will require that each party bear its own costs related to this motion.

## **ORDER**

Based on the foregoing, and good cause appearing therefore,

IT IS HEREBY ORDERED that Plaintiff's Emergency Motion to Compel Responses to Plaintiff's First Document Requests Nos. 18-24, 36, and 38 and Plaintiff's First Interrogatories Nos.

---

[9] WMC's claim that it possesses information that Heritage is attempting to gain the information in order to "mimic" its business plan is unsupported and spurious. If WMC possesses such information, it is obligated to present that to the court so that the claim can be properly evaluated. Further, any concerns regarding trade secrets or information can be properly addressed through a comprehensive protective order or confidentiality agreement.

14-17 (#25) is **GRANTED** in part and **DENIED** in part.

IT IS FURTHER ORDERED that Defendant shall provide supplemental responses to Interrogatory Nos. 14-17 and Requests for Production Nos. 18-24, 36, 38 consistent with this Order. Such responses must be served within twenty (20) days after receipt of this Order.

IT IS FURTHER ORDERED that, to the extent an agreement is not already in place, the parties are ordered to meet and confer for purposes of a stipulated protective order or confidentiality agreement relating to any trade secret or other confidential research development, or commercial information which may be implicated by this Order.

DATED this 11th day of September, 2009.

_____
ROBERT J. JOHNSTON
United States Magistrate Judge